UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:14-CR-17-TAV-HBG-2 |
| TIMOTHY CHUDLEY, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's motion for compassionate release [Doc. 193]. The United States has filed a response in opposition [Doc. 195], and defendant has filed a reply [Doc. 196]. The matter is now ripe for resolution. For the reasons set forth more fully below, defendant's motion for compassionate release [Doc. 193] will be **DENIED**.

**I. Background**

On May 20, 2014, defendant pleaded guilty to one count of aiding and abetting Hobbs Act Robbery in violation of 18 U.S.C. §§ 1951 and 2 [Docs. 12, 31]. Defendant received a sentence of 105 months of imprisonment to be followed by three years of supervised release [Doc. 117], and he is scheduled to be released on January 26, 2022. *Inmate Locator*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 16, 2021).

On August 2, 2021, the Bureau of Prisons sent defendant to a residential reentry center for the remainder of his sentence [Doc. 195-2]. However, on October 1, 2021,

defendant was transferred to Blount County Justice Center (where he remains) because he tested positive for suboxone and methamphetamine [Docs. 195-1, 195-2, 195-3].

## II. Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239. Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable," if the court finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.*

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (alterations in original) (citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. In considering a compassionate release motion, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

3

**III.    Analysis**

    **A.    Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion**

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits.  *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020).  "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'"  *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)).  The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture.  *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

The United States waives the exhaustion requirement in this case [Doc. 195 p. 2].  Thus, the Court may consider the merits of defendant's motion.

    **B.    Extraordinary and Compelling Circumstances**

The Court finds that defendant has not established extraordinary and compelling reasons for compassionate release.  In reaching this decision, the Court recognizes that it has discretion to determine what constitutes extraordinary and compelling reasons.  *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020).

Defendant raises several arguments that, according to defendant, when combined, constitute extra compelling circumstances.  Specifically, defendant argues that his mother is dying from lung cancer, is in hospice care, and wishes to spend time with defendant before she dies [Doc. 193].  Defendant notes his mother has not seen him in eight years because she has not been well enough to travel to visit him [*Id.* at 2].  Further, defendant

4

highlights that he has only slightly over one month remaining on his federal sentence [*Id.* at 3].

The Court finds that defendant has not presented extraordinary and compelling circumstances to support compassionate release. It is neither extraordinary nor compelling for a prisoner to be incarcerated while a close family member is sick or dying. *See United States v. Farnsworth*, No. 15-20095, 2021 WL 4962135, at *5 (E.D. Mich. Oct. 26, 2021) ("While it is unfortunate that [the defendant's] mother misses her son, this is not extraordinary nor is it a compelling reason to grant . . . release"); *United States v. Green*, No. 7-20411, 2021 WL 3782691, at *2 (E.D. Mich. Aug. 26, 2021) (finding that a mother's poor health did not present extraordinary or compelling circumstances even when combined with the defendant's rehabilitative efforts); *United States v. Hunter*, No. 3:06-CR-61, 2020 WL 127711, at *3 (S.D. Ohio Jan. 10, 2020) (finding the fact that the defendant desired to "make amends" with his mother before "she passe[d] away" and to care for her did not present extraordinary or compelling circumstances). Unfortunately, being separated from family members and the related hardship are common consequences of a term of imprisonment. *See United States v. Coreau*, No. 5:17-CR-6-TBR-2, 2021 WL 4555267, at *2 (W.D. Ky. Oct. 5, 2021) ("[H]ardship on the family almost always results from serious criminal conduct, and rarely rises to the level of extraordinary and compelling." (citation omitted)).

Defendant concedes he is not seeking release from prison to care for his mother as she "is receiving excellent care" from her hospice facility and other family members

5

[Doc. 193 p. 3]. And the Court notes that a situation where a defendant seeks compassionate release to care for a family member, while not always extraordinary and compelling, is generally more extraordinary and compelling than a situation where the defendant merely seeks to spend time with a family member.

Furthermore, defendant provides insufficient medical records to support his claim. Defendant provides only his mother's hospice application paperwork [Doc. 193-1]. But nothing in this paperwork demonstrates the severity of his mother's condition or even from which ailments she suffers [*See id.*]. Therefore, even if defendant's alleged circumstances were extraordinary and compelling, defendant has failed to meet his burden to substantiate his claim. *See United States v. Davis*, No. 2:13-CR-46-8-JRG, 2020 WL 829367, at *7 (E.D. Tenn. Mar. 4, 2021) (denying a motion for compassionate release when the defendant failed to provide medical documentation to substantiate his claims regarding his mother's conditions); *see also Farnsworth*, 2021 WL 4962135, at *5 (same).

In sum, the Court finds defendant's mother's declining health, even when combined with the slight amount of time remaining on defendant's sentence, does not rise to the level needed to satisfy the extraordinary and compelling requirement.

### C. Section 3553(a) Factors

Even if defendant had presented extraordinary and compelling circumstances, the Court nevertheless finds the § 3553(a) factors weigh against granting compassionate release. Section "3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and

6

two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (alterations in original) (citation omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). 18 U.S.C. § 3553(a); *see also Pepper v. United States*, 562 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. 18 U.S.C. § 3553(a); *see also Pepper*, 562 U.S. at 491.

The Court begins with the criminal conduct at issue in this case. The plea agreement describes the relevant facts as follows:

> Prior to January 30, 2014, the defendant and Joshua Hayworth conspired to rob the Burger King, located at or near 120 Simpson Road, Lenoir City, Tennessee, which is where the defendant was then-employed. They talked about the robbery and the manner in which it would committed [sic], to include that Joshua Hayworth would enter the Burger King through the back door, that the robbery would be committed shortly after closing time, and that during the robbery, Joshua Hayworth would hit the defendant. They also agreed to split the robbery money equally. On January 30, 2014, before the robbery, the defendant sent text messages to Joshua Hayworth, telling him where the money in the Burger King is kept and that Burger King does not have an alarm. A few minutes before the robbery, Joshua Hayworth sent a text message to the defendant stating that he was almost there.
>
> At approximately 11:14 p.m., on January 30, 2014, the defendant opened the back door to the Burger King and he saw Joshua Hayworth in the nearby bushes. As planned, Joshua Hayworth came into the Burger King through the

7

> back door. Joshua Hayworth was wearing knotted-together clothing covering his face and neck to hide his tattoos. Also, as planned, when Joshua Hayworth entered the Burger King, he hit the defendant in the head with an airsoft pistol. Joshua Hayworth then proceeded to the area of the Burger King where the safe is kept, pointed his airsoft pistol at the employees, ordered the employees to the ground, threatened to shoot the employees, and demanded money. Joshua Hayworth obtained money that belonged to the Burger King and placed this money into a bag that he had brought with him, as previously instructed by the defendant. After receiving the money, Joshua Hayworth fled out the back door of the Burger King.

[Doc. 12 ¶ 3].

The Court finds that based on these facts, defendant's offense was a serious and violent offense. The Court finds that the severity of defendant's offense emphasizes the need for adequate deterrence, to promote just punishment, and to protect the public from future offenses by defendant. Nor was this defendant's first conviction. Defendant is a career offender with significant criminal history, and his criminal history includes serious convictions, including driving offenses, trespassing, assault, robbery, possession of a controlled substance, burglary, burglary of a vehicle, aggravated burglary, evading arrest, and theft [Doc. 41 ¶¶ 21, 28–45, 49].

The Court has also considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of defendant, and to provide defendant with needed education and training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a). Further, the Court has considered the kinds of sentences available, the guideline sentencing range, and the need to avoid unwarranted disparities. *Id.*

Defendant argues that the Bureau of Prisons would not have placed him on a bus and permitted him to serve the remainder of his sentence in a residential reentry center if he was a danger to the community [Doc. 196 p. 3]. However, the Court notes that defendant used illegal substances less than two months after being placed in the residential reentry center. The Court further notes defendant's serious criminal history described above, which was persistent until defendant's incarceration. Regardless, defendant's danger to the community is only one facet the Court must consider.

Defendant further argues the amount of time he has served in prison provides a basis for relief. As the Court noted above, defendant was sentenced to a total term of imprisonment of 105 months [Doc. 117], and he is due to be released January 26, 2022, approximately one month from now. *Inmate Locator*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 16, 2021). The Sixth Circuit has ruled that courts may consider the amount of time a defendant has served when ruling on a motion for compassionate release. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). In this instance, including good time credit, defendant has served approximately 99% of his sentence and therefore defendant has served a substantial portion of his sentence. However, while the time defendant has served is relevant and weighs toward release in this

9

case, the Court nevertheless finds on balance that the § 3553(a) factors weigh against release for the reasons discussed.

The Court is also cognizant of defendant's arguments regarding the extent of his rehabilitative efforts. While the Court recognizes defendant's efforts to improve himself by taking advantage of the training and programs offered by the Bureau of Prisons as well as defendant's plan to continue to seek treatment after incarceration, the Court does not find defendant's rehabilitative efforts outweigh the other sentencing factors, particularly considering defendant has used illegal substances including methamphetamine within the last three months while at a residential reentry center.

Finally, defendant avers he is a lifelong addict but that he can manage his addiction while serving a term of supervised release, which includes a requirement that defendant participate in a drug abuse treatment program. However, the Court finds this argument unpersuasive because defendant used illegal substances while at a residential reentry center and therefore while already subject to supervision outside of prison. And while defendant highlights that he tested positive for suboxone, a drug used to treat opiate addiction, the Court notes defendant also tested positive for methamphetamine. In light of this conduct, the Court finds that defendant has a significant potential to reoffend.

After considering the above, and all other evidence of record, the Court finds that the § 3553(a) factors weigh against granting compassionate release. In reaching this decision, the Court has considered the parties' filings, the presentence investigation report, the § 3553(a) factors and other relevant law, and the record as a whole. While the Court

notes defendant has served a significant portion of his sentence, it is only part of the compassionate release calculus. On the record before the Court, the sentencing factors weigh against early release.[1]

**IV.    Conclusion**

For the reasons set forth more fully above, defendant's motion for compassionate release [Doc. 193] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE

---

[1] The Court has received information from the United States Marshals Service that Mr. Chudley was transferred to Midway Rehab Center on January 3, 2022. While the Court denies defendant's motion for compassionate release, the Court notes defendant may coordinate a video visit with his mother while at Midway.